FILED
2012 Apr-02  AM 09:18
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | |
|---|---|
| **BRANDON W. PIERCE, an individual,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No.:** |
| ) | |
| **MIDLAND FUNDING, LLC, a corporation; MIDLAND CREDIT MANAGEMENT, INC., a corporation;** ) | |
| ) | |
| **Defendants.** ) | |

## <u>COMPLAINT</u>

**COMES NOW** the Plaintiff, by and through counsel, and for his Complaint against the Defendants states as follows:

1.   This action arises out of Defendants' repeated violations of the Fair Debt Collection Practices Act[1] (15 U.S.C. § 1692 et seq. [hereinafter "FDCPA"]), out of state law violations and out of the invasion of Plaintiff's personal and financial privacy by the Defendants and their agents in its illegal efforts to collect a consumer debt from Plaintiff.

2.   The Plaintiff was sued for a debt he did not owe.

---

[1] Any reference the FDCPA or any part thereof encompasses all relevant parts and subparts thereto.

3.     The Plaintiff won the lawsuit.

4.     Defendants have continued to illegally collect against Plaintiff on a debt he does not owe.

## JURISDICTION

5.     Personal jurisdiction exists over Defendants as they have the necessary minimum contacts with the State of Alabama and this suit arises out of their specific conduct with Plaintiffs in Alabama.

6.     Subject matter jurisdiction exists under federal question jurisdiction (28 U.S.C. Section 1331) and through diversity jurisdiction (28 U.S.C. Section 1332).

## VENUE

7.     Venue is proper as Plaintiff lives in this judicial district, the events took place in this judicial district, and all Defendants do business in this judicial district.

## PARTIES

8.     Plaintiff Brandon W. Pierce (hereinafter "Plaintiff") is a natural person who is a resident of Alabama, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

9.      Defendant Midland Funding, LLC, ("Defendant" or "Midland[2]") is a foreign debt collection firm that engages in the business of debt collection in Alabama.  It is a debt collector under the FDCPA.  It is incorporated in Delaware and has its principal place of business in California.

10.     Defendant Midland Credit Management, Inc., ("Defendant" or "Midland") is a foreign debt collection firm that engages in the business of debt collection in Alabama.  It is a debt collector under the FDCPA.  It is incorporated in and has its principal place of business in California.

11.     In this case, Defendants Midland Funding, LLC and Midland Credit Management, Inc. acted as agents for each other and all actions taken by one entity were taken on behalf of the other entity.

12.     Defendant Midland Funding, LLC and Defendant Midland Credit Management, Inc. are hereinafter referred to collectively as "Midland."

13.     Defendant Midland Funding, LLC, upon information and belief, allegedly buys defaulted consumer debt.

14.     Defendant Midland Funding, LLC, assigns all collection activities for the defaulted debt to Midland Credit Management, Inc.

---

[2] "Midland Funding, LLC" or "Midland Credit Management, Inc." means Midland directly or through its debt collectors, employees and agents and the collection law firm that sued Plaintiff, credit reported against Plaintiff, or otherwise took any collection action against Plaintiff.

15.    These companies are operated from the same location, with the same ownership, and are otherwise treated as one company.

## BACKGROUND INFORMATION ON DEBT BUYER LAWSUITS IN ALABAMA

16.    This case represents a growing trend in the debt collection and credit reporting industries.

17.    First, a debt buyer which claims to buy the Plaintiff's debt for pennies on the dollar will sue the Plaintiff in small claims or district court.

18.    While the debt buyer will claim that it has accurate records, this is not true.

19.    The purchase agreement between the original creditor and the first debt buyer will state that there is no promise or representation as to the accuracy of the information sold to the first debt buyer.

20.    That first debt buyer cannot represent any greater quality to any subsequent debt buyer.

21.    In any event, one of the debt buyers will sue the Alabama consumer.

22.    The debt buyer will hire a collection law firm to file the suit.

23.    Generally, most consumers default as they assume if a lawsuit has been filed, it must be legitimate.

24.    Occasionally, however, the consumer will file an answer and deny owing money to the debt buyer.

25.  This causes great annoyance and angst for the debt buyer and the collection law firm.

26.  The reason is that the debt buyer and the collection lawyer know that in virtually every case they will be unable (or unwilling) to prove that the consumer owes this debt to the debt buyer.

27.  The debt buyer and collection law firm have no intention of proving their case.

28.  No witness will be provided by the debt buyer.

29.  The entire model is based upon filing a high volume of cases, obtaining default judgments, and never having to make any effort to prove the allegations of the lawsuit.

30.  When resistance is provided, such as an attorney defending a consumer, the debt buyer's collection law firm will dismiss the case or will show up at trial with no evidence, no witness, and no intention of proving the case.

31.  This is a reality that the debt buyers and collection lawyers prefer to keep secret from consumers in Alabama.

32.  The case gets set for trial.

33.  Even a pro se Defendant who will not speculate on the debt buyer owning the alleged debt will normally win at trial against a represented debt buyer.

34.  The debt buyer and collection law firm have 14 days to appeal from an adverse judgment in Alabama Small Claims or Alabama District Court.

35.     The debt buyer does not appeal.

36.     The debt buyer knows that losing its case means under Alabama law that the debt is not owed by the consumer to the debt buyer.

37.     The collection lawyer knows that losing its case means under Alabama law that the debt is not owed by the consumer to the debt buyer.

38.     Since the debt is not owed, collection efforts must cease.

39.     Since the debt is not owed, credit reporting must cease by the debt buyer (and its related collection entities).

40.     Normally, however, the debt buyer (and even sometimes the collection law firm) is not willing to give up.

41.     The debt buyer will continue to credit report that the consumer owes the debt.

42.     The same debt that a court determined is not owed.

43.     Often the consumer will be convinced to pay the non existent debt to get it off their credit report or to stop the collection activities.

44.     When confronted about their actions, the debt buyer, the collection agency, and its agents (including attorneys) will say the payment was voluntary.

45.     The debt buyer and collection agency will say the collection efforts were merely accidents caused by one or more of the following (or similar excuses):

46.     "A new person was working who improperly coded the file."

47.     "A simple keyboard error occurred that kept the debt alive."

48. "The letters and calls and credit reporting were simply to give the consumer a chance to pay off a moral obligation but were not really attempts to collect the debt."

49. "The debt buyer files so many lawsuits; it can't be expected to keep up with which ones it loses."

50. "The debt buyer did not even know the collection law firm had filed the suit."

51. "The collection law firm never told the debt buyer the suit had been lost."

52. "The debt buyer and collection agency can collect on any debt, even one that is not owed, because the consumer is guilty until he or she proves that she is innocent."

53. "Collection is important in America for the economy, so if some innocent people are harassed, it is acceptable for the good of the economy."

54. "Being harassed and sued and credit reported on a debt you do not owe should not cause any one any problems."

55. "Debt collection is a tough business and there are going to be innocent people who are harmed and that is just a reality and there is no need to get upset about it or to sue anyone.  It is part of life."

56. When sued over this illegal conduct, the debt buyer will make the excuses listed above.

57.   Ultimately, when sued, the debt buyer will say "Well, yes, technically this should not have happened but despite losing in court we all know this consumer really did owe the money, so we are allowed to violate multiple state and federal laws."

58.   When sued, the debt buyer will say it is the fault of the consumer.

59.   When sued, the debt buyer will blame the collection law firm.

60.   When sued, the debt buyer will say the consumer is guilty of contributory negligence.

61.   Amazingly, when sued the debt buyer will say that the judgment of a small claims or state district court judge is not a "real judgment" and should not bind the debt buyer and the debt buyer will desire to show that the debt really was owed, despite losing the collection lawsuit.

62.   The Plaintiff in this case disagrees and has brought this case to expose this dark side of the collection industry and how the collection industry abuses consumers across Alabama in a routine, systematic, and deliberate manner.

## RECOGNITION OF THE WIDESPREAD ABUSE BY COLLECTORS

63.   Congress found it necessary to pass the FDCPA due to rampant abusive practices by dishonorable debt collectors.

64. Congress recognized that there are four social ills caused by abusive debt collection: (1) Unnecessary personal bankruptcies; (2) Marital instability; (3) Loss of jobs; and (4) Invasions of individual privacy.

65. Congress also found that it is fundamentally unfair for the abusive collection agencies to have an unfair competitive advantage over those honorable debt collectors that decide to obey the law and follow the rules.

66. 15 USC § 1692 is entitled "Congressional findings and declaration of purpose" and it states as follows:

(a) There is **abundant evidence** of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. **Abusive debt collection practices contribute** to the number of personal bankruptcies, to marital instability, to the loss of jobs, and **to invasions of individual privacy**.

(b) Existing laws and procedures for redressing these injuries are inadequate to protect consumers.

(c) **Means other than** misrepresentation or other **abusive debt collection practices are available for the effective collection of debts**.

(d) Abusive debt collection practices are carried on to a substantial extent in interstate commerce and through means and instrumentalities of such commerce. Even where abusive debt collection practices are purely intrastate in character, they nevertheless directly affect interstate commerce.

(e) It is the **purpose** of this title to **eliminate abusive debt collection practices** by debt collectors, to **insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged**, and to promote consistent State action to protect consumers against debt collection abuses.

[Emphasis added].

## FACTUAL ALLEGATIONS

### The Small Claims Complaint

67.   On October 24, 2011, Defendant Midland sued Plaintiff in the Small Claims Court of Tuscaloosa County, Alabama, with a case number of SM-2011-900909.

68.   This suit was filed by the Holloway & Moxley, LLP collection law firm.

69.   In this suit, Defendant Midland asserted it was the owner of a certain debt allegedly owed by Plaintiff.

70.   Defendant Midland alleged only one cause of action against Plaintiff: Midland claimed Plaintiff owed $2,127.64 on an "Account Stated".

71.   Defendant Midland also claimed court costs.

72.   Defendant Midland knows that Plaintiff has never done business with Defendant Midland.

73.   Defendant Midland knows that there is no contract between Defendant Midland and Plaintiff and this is why Defendant Midland did not sue Plaintiff for a breach of any contract.

74.   Defendant Midland knows that there was and is no "Account Stated" between the parties.

75.   The complaint does not state who the original creditor is or when Defendant Midland allegedly obtained the debt.

76.   No mention was made in the lawsuit that whoever sold the alleged debt to Midland disclaimed the accuracy of the records.

77.   But given that Defendant Midland filed the lawsuit, Defendant Midland would be expected to have an intention of proving its case.

78.   No such intention existed.

79.   Defendant Midland never intended to offer one shred of admissible evidence to prove its case.

80.   Defendant Midland never intended to bring to trial a single witness from the original creditor.

81.   Defendant Midland never intended to bring to trial a single witness from any other debt buyer in the chain of title.

82.   Remarkably, Defendant Midland never intended to bring to trial a single witness from Defendant Midland.

83.   This lawsuit, and the hundreds of other Alabama lawsuits filed by Midland, was filed with the intention of getting default judgments on debts that Defendant Midland cannot and will not prove it has any right to collect on.

## Plaintiff Answers The Midland Lawsuit

84.   Plaintiff did not and does not owe the debt.

85.   Plaintiff filed an Answer denying the allegations of Defendant Midland.

86.   Defendant Midland received a copy of this denial at least through the automatic notification court system (AlaFile).

87.   Defendant Midland understood that Plaintiff was refusing to pay on this debt.

88.   Defendant Midland understood that Plaintiff disputed the debt.

## The Judge Sets The Midland Lawsuit For Trial

89.   The state court set the case for trial.

90.   Notice was sent to Defendant Midland and Plaintiff.

91.   At all times Plaintiff was prepared for trial.

92.   Defendant Midland was never prepared to try the lawsuit that it brought against Plaintiff.

## Midland Loses The Trial

93.   Defendant Midland showed up at trial on January 9, 2012, with no witnesses.

94.   The only documents that Defendant Midland tried to have admitted consist of a self serving letter written to Plaintiff on February 22, 2011, by Defendant Midland.

95.   Defendant Midland never sought to offer any evidence that it had purchased this debt or owned the alleged debt.

96.  The attempt by Defendant Midland to prove its case was so lacking that the trial judge ruled in favor of Plaintiff, a pro se party in the collection case.

97.  This ended the case Defendant Midland filed against Plaintiff.

98.  This should have ended the collection activities against Plaintiff by Defendant Midland.

99.  Collection activities continued.

## Implications Of Losing The Case

100.  Defendant Midland knows that under Alabama law when it loses a case, this means Plaintiff does not owe Defendant Midland any money on this alleged debt.

101.  Defendant Midland knows that losing the case means that it cannot credit report this account on Plaintiff.

102.  Defendant Midland knows that losing the case means it cannot continue to collect against Plaintiff on this account.

103.  Defendant Midland knows that losing the case means that it cannot send the account out to a collection agency.

## False Credit Reporting By Defendant Midland

104.  Before the lawsuit was filed, Defendant Midland reported on Plaintiff's credit reports that he owed this debt to Defendant Midland.

105.   Even after the lawsuit was filed, Defendant Midland reported on Plaintiff's credit report that this account was owed.

106.   Even after Plaintiff filed an Answer denying owing Defendant Midland any money, the account was not marked as "disputed" as required by the FDCPA 15 U.S.C. Section 1692e(8).

107.   Even after the loss by Defendant Midland on January 9, 2012, credit reporting continued.

108.   Plaintiff's credit report, accessed even this month show the Defendant Midland account still on Plaintiff's credit report.

## **Why Defendant Midland Falsely Credit Reports**

109.   Defendant Midland has a policy and procedure to refuse to properly update credit reports of consumers, like Plaintiff, who do not owe the alleged debt. The reason is to keep false information on the credit report.   The false information consists of a balance shown as owed when Defendant Midland knows no balance is owed.

110.   Defendant Midland has promised through its subscriber agreements or contracts to accurately update accounts but Defendant Midland has willfully, maliciously, recklessly, wantonly, and/or negligently failed to follow this requirement as well as the requirements set forth under the FDCPA and state

law, which has resulted in the intended consequences of this information remaining on Plaintiff's credit reports.

111.  Defendant Midland assumed a duty, through the subscriber agreement and other actions, to accurately report the balances and this duty was breached in a negligent, wanton, reckless, willful, intentional, and/or malicious manner.

112.  Defendant Midland has a policy to "park" its accounts on at least one of the consumer's credit report.  This is a term in the industry for keeping a false balance (or false account) on the credit report so that the consumer will be forced to pay off the balance in order to obtain a refinancing or to qualify for a loan or to increase the consumer's credit score from the artificially lowered score which directly resulted from the Defendant Midland 's intentional and malicious conduct.

113.  In parking or allowing the parking of an account, Defendant Midland knows it is violating its obligation and duty under federal and state law to accurately report the account and the balance.

114.  Defendant Midland knows that parking a balance will lead to false and defamatory information being published every time the Plaintiff's credit report is accessed and this is the malicious and intentional design behind Defendant's actions with the goal to force the Plaintiff to pay on an account Plaintiff does not owe.

115.   Defendant Midland failed to properly maintain and failed to follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit information and Plaintiff's credit report, concerning the account in question, thus violating state law and FDCPA as set forth in this Complaint. These violations occurred before, during, and after the dispute process began with the consumer reporting agencies.

116.   Defendant Midland has taken illegal aggressive actions in a continued effort to collect the alleged debt against Plaintiff.   These actions include the continued reporting of the debt to third parties, including consumer-reporting agencies, that Plaintiff owes the debt, that Plaintiff defaulted, and that the account was in collections with a balance currently owed.

### Remaining Factual Allegations Against Defendant Midland

117.   Defendant Midland is not the owner of this alleged debt.

118.   Defendants Midland has continued collection activities against Plaintiff.

119.   These continued collection activities include credit reporting.

120.   Plaintiff did not and does not owe this money to Defendant Midland.

121.   The debt being collected is a consumer debt as defined by the FDCPA.   15 U.S.C. Section 1692a(5).

122.   Plaintiff is a "consumer" as defined by the FDCPA.   15 U.S.C. Section 1692a(3).

123.   Defendant Midland is a "debt collector" as defined by the FDCPA.  15 U.S.C. Section 1692a(6).

124.   Defendant Midland refused to give Plaintiff all required notifications and disclosures under the FDCPA.  15 U.S.C. Section 1692e(11).

125.   Defendant Midland knows that losing the case against the Plaintiff shows that Plaintiff does not owe this debt to Defendant Midland.

126.   The collection activities before, during, and after the lawsuit were illegal as Plaintiff does not and did not owe the debt to Defendant Midland but yet Defendant Midland has falsely represented Plaintiff does and has taken illegal actions to collect the debt that is not owed.

127.   Defendant Midland has been repeatedly sued in Alabama for filing suits with no basis to do so.

128.   Defendant Midland has been repeatedly sued in Alabama for filing suits with no intention of proving the allegations in the lawsuits.

129.   Defendant Midland has been repeatedly sued in Alabama for refusing to correct credit reports after it has lost a collection case.

130.   Defendant Midland has full knowledge of what it is doing by filing bogus lawsuits and engaging in illegal collection activities before and after losing its collection lawsuits.

131.  The conduct of the Defendant Midland has proximately caused Plaintiff past and future monetary loss, past and future damage to Plaintiff's credit and credit worthiness, past and future mental distress and emotional anguish, and other damages that will be presented to the trier of fact.

132.  It is a practice of the Defendant Midland to maliciously, willfully, recklessly, wantonly and/or negligently ignore and refuse to follow the requirements of the FDCPA and state law.

133.  Defendant Midland knows its conduct is wrong.

134.  All actions taken by employees, agents, servants, or representatives of any type for the Defendant Midland were taken in the line and scope of such individuals' employment, agency or representation.

135.  All actions taken by the Defendant Midland were done with malice, were done willfully, and were done with either the desire to harm Plaintiff and/or with the knowledge that their actions would very likely harm Plaintiff and/or that their actions were taken in violation of the FDCPA and/or state law and/or that they knew or should have known that its actions were in reckless disregard of the FDCPA and/or state law.

136.  Defendant Midland has engaged in a pattern and practice of wrongful and unlawful behavior and as such Defendant Midland is subject to punitive

damages and statutory damages and all other appropriate measures to punish and deter similar future conduct by this Defendant and similar companies.

137.  Defendant Midland is liable to Plaintiff through the doctrine of Respondeat Superior for the wrongful, intentional and negligent acts, errors, and omissions done in violation of state and federal law by their collection employees and agents, including but not limited to violations of the FDCPA and Alabama tort law, in its attempts to collect this debt from Plaintiff.

## SUMMARY

138.  All of the above-described collection activities made to Plaintiff by Defendant Midland were made in violation of the FDCPA, including (but not limited to) §1692d, 1692e, 1692e(2), 1692e(4), 1692e(5), 1692e(8), 1692e(10), 1692e(11), 1692f, 1692f(1), 1692f(6), and 1692g.

139.  The above-detailed conduct by the Defendant Midland of harassing Plaintiff in an effort to collect this debt was also an invasion of Plaintiff's privacy and resulted in actual damages to the Plaintiff.

140.  This series of abusive collection actions by Defendant Midland caused Plaintiff stress and anguish.

141.  Defendant Midland 's attempts to collect this debt from Plaintiff and refusal to stop violating the law is an invasion of Plaintiff's privacy and Plaintiff's right to be left alone.

142. Plaintiff has suffered actual damages as a result of these illegal actions by Defendant in the form of anger, anxiety, emotional distress, fear, frustration, upset, humiliation, embarrassment, amongst other negative emotions, as well as suffering from unjustified and abusive invasions of personal privacy.

## **NEGLIGENT AND WANTON HIRING AND SUPERVISION**

143. Defendant Midland negligently and/or wantonly hired, retained, or supervised incompetent debt collectors and are thereby responsible to the Plaintiff for the wrongs committed against Plaintiff and the damages suffered by Plaintiff.

## **CAUSES OF ACTION**

### **COUNT I.**

### **VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**
### **15 U.S.C. § 1692 et seq.**

144. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

145. The acts and omissions of Defendant Midland constitute numerous and multiple violations of the FDCPA with respect to the Plaintiff, including (but not limited to) §1692d, 1692e, 1692e(2), 1692e(4), 1692e(5), 1692e(8), 1692e(10), 1692e(11), 1692f, 1692f(1), 1692f(6), and 1692g.

146. As a result of Defendant Midland's violations of the FDCPA, Plaintiff is entitled to actual damages; statutory damages; and reasonable attorney's fees, expenses and costs from Defendant Midland.

## COUNT II.

## INVASION OF PRIVACY

147. Plaintiff incorporates by reference all of the paragraphs of this Complaint as though fully stated herein.

148. Alabama law recognizes Plaintiff's right to be free from invasions of privacy and Defendant Midland violated Alabama state law as described in this Complaint.

149. Congress explicitly recognized a consumer's inherent right to privacy in collection matters in passing the Fair Debt Collection Practices Act, when it stated as part of its findings:

> **Abusive debt collection practices contribute** to the number of personal bankruptcies, to marital instability, to the loss of jobs, and **to invasions of individual privacy.**

15 U.S.C. § 1692(a) (emphasis added).

150. Congress further recognized a consumer's right to privacy in financial data in passing the Gramm Leech Bliley Act, which regulates the privacy of consumer financial data for a broad range of "financial institutions" including debt collectors (albeit without a private right of action), when it stated as part of its purposes:

> It is the policy of the Congress that **each financial institution has an affirmative and continuing obligation to respect the privacy of its customers** and to protect the security and

confidentiality of those customers' nonpublic personal information.

15 U.S.C. § 6801(a) (emphasis added).

151.   Defendant Midland intentionally, recklessly, and/or negligently interfered, physically or otherwise, with the solitude, seclusion and or private concerns or affairs of the Plaintiff, namely, by repeatedly and unlawfully attempting to collect a debt and thereby invaded Plaintiff's privacy.

152.   Defendant Midland intentionally, recklessly, and/or negligently caused emotional harm to Plaintiff by engaging in highly offensive conduct in the course of collecting this debt, thereby invading and intruding upon Plaintiff's right to privacy.

153.   Plaintiff had a reasonable expectation of privacy in Plaintiff's solitude, seclusion, private concerns or affairs, and private financial information.

154.   The conduct of Defendant Midland, in engaging in the above-described illegal collection conduct against Plaintiff, resulted in multiple intrusions and invasions of privacy by Defendant Midland which occurred in a way that would be highly offensive to a reasonable person in that position.

155.   Defendant Midland set into action a scheme and plan to go beyond the bounds of legitimate debt collection in order to harass Plaintiff and Defendant Midland's plan worked.

156.   As a result of such intrusions and invasions of privacy, Plaintiff is entitled to actual damages in an amount to be determined at trial from Defendant Midland.

157.   All acts of Defendant Midland were committed with malice, intent, wantonness, and/or recklessness and as such Defendant Midland is subject to punitive damages.

## COUNT III.

## NEGLIGENT, WANTON, AND/OR INTENTIONAL HIRING AND SUPERVISION OF INCOMPETENT DEBT COLLECTORS

158.   Plaintiff incorporates by reference all of the paragraphs of this Complaint as though fully stated herein.

159.   Defendant Midland's collectors are allowed and encouraged to break the law in order to collect debts.

160.   Defendant Midland is aware of the wrongful conduct of its collectors.

161.   Defendant Midland negligently, wantonly, and/or intentionally hired, retained, or supervised incompetent debt collectors, who were allowed or encouraged to violate the law as was done to Plaintiff, and Defendant Midland is thereby responsible to the Plaintiff for the wrongs committed against Plaintiff and the damages suffered by Plaintiff.

## COUNT IV.

## NEGLIGENT, WANTON, AND INTENTIONAL CONDUCT

162.  All paragraphs of this Complaint are expressly adopted and incorporated herein as if fully set forth herein.

163.  Defendant Midland had a duty, and assumed a duty, to treat Plaintiff fairly and with reasonable care.

164.  Defendant Midland acted with negligence, malice, wantonness, recklessness, and/or intentional conduct in their dealings with and about Plaintiff as set forth in this Complaint.

165.  Defendant Midland violated all of the duties Defendant Midland had and such violations were made intentionally, willfully, recklessly, maliciously, wantonly, and negligently.

166.  It was foreseeable, and Defendant Midland did in fact foresee it, the actions of Defendant Midland would lead and did lead to the exact type of harm suffered by Plaintiff.

167.  Defendant Midland acted with negligence, malice, wantonness, recklessness, and/or intentional conduct in their dealings with and about Plaintiff as set forth in this Complaint.

168.  Defendant Midland invaded the privacy of Plaintiff as set forth in Alabama law.

169. Such negligence, malice, wantonness, recklessness, willfulness, and/or intentional conduct proximately caused the damages set forth in this complaint.

170. As a result of this conduct, action, and inaction of Defendant Midland, Plaintiff has suffered damages as set forth in this Complaint.

## COUNT V

## MALICIOUS PROSECUTION AND ABUSE OF PROCESS AGAINST DEFENDANT MIDLAND

171. All paragraphs of this Complaint are expressly adopted and incorporated herein as if fully set forth herein.

172. Defendant Midland instituted and continued prosecuting the lawsuit against Plaintiff with no reasonable basis to do so.

173. Defendant Midland filed the lawsuit with no intention of ever proving its case.

174. Defendant Midland continued to prosecute the case with no intention of ever proving its case.

175. Defendant Midland filed and used this case as a means of attempting to extort money out of Plaintiff or obtaining a default judgment against Plaintiff if Plaintiff did not answer the suit.

176. Defendant Midland instituted and continued prosecuting the lawsuit against Plaintiff with malice and with the design and plan that the lawsuit would

result in an illegal judgment against the Plaintiff or would cause Plaintiff to pay Defendant Midland money on a non-existent debt.

177.   The malicious plan of Defendant Midland included the knowledge that the fraudulent judgment would be devastating to Plaintiff's credit report and credit scores and would lead to garnishments and the Defendant Midland tried to accomplish this by the Defendant Midland's malicious and abusive actions.

178.   Throughout the entire illegal lawsuit against Plaintiff, Defendant Midland knew at all times that there was no basis for the lawsuit and the intent and design of filing the lawsuit and continuing to prosecute the lawsuit was to extort money from the Plaintiff which Defendant Midland knew it was not entitled to receive.

179.   The litigation against Plaintiff filed by Defendant Midland   eventually resulted in an adjudication in favor of Plaintiff.

180.   The illegal and improper actions of the Defendant Midland   constitute malicious prosecution and abuse of process.

181.   The Plaintiff suffered past and future emotional distress and monetary loss as a direct and proximate result of Defendant Midland 's abuse of process and malicious prosecution.

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, **PREMISES CONSIDERED,** Plaintiff prays that judgment be entered against all Defendants for all damages allowable (including statutory, actual, compensatory, nominal and punitive), costs, expenses, fees, injunctive relief to prevent further violations, and for such other and further relief as may be just and proper.

Respectfully Submitted,

/s/ John G. Watts
**John G. Watts (ASB-5819-t82j)**
**M. Stan Herring (ASB-1074-n72m)**
Watts & Herring, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 879-2447
(888) 522-7167 *facsimile*
john@wattsherring.com
stan@wattsherring.com

**Attorneys for Plaintiff**


**PLAINTIFF DEMANDS A TRIAL BY JURY IN THIS CAUSE.**

/s/ John G. Watts
**Attorney for Plaintiff**

**Serve defendants via certified mail at the following addresses:**

Midland Funding, LLC
c/o CSC Lawyers Incorporating Srv Inc
150 S. Perry Street
Montgomery, Alabama 36104

Midland Credit Management, Inc.
c/o CSC Lawyers Incorporating Srv Inc
150 S. Perry Street
Montgomery, Alabama 36104